UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Cambridge Towel Company, Inc., ) | |
| ) | C/A No.: 7:14-cv-04089-GRA |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | (Written Opinion) |
| Zimmer America Corporation, and ) | |
| Juame Anglada Vinas, S.A., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    This matter comes before the Court on Plaintiff, Cambridge Towel Company Inc.'s ("Cambridge"), Motion to Compel Arbitration and Stay Proceedings pending arbitration. ECF No. 42. This action involves claims by companies with international locations and interests with regard to a piece of machinery used for the manufacture and drying of towels. In June 2013, Cambridge purchased machinery from Defendant, Juame Anglada Vinas, S.A. ("Anglada"), after "several visits to the Anglada plant in Spain." ECF No. 42. Cambridge specially ordered the machinery from Anglada, which Anglada routed through its sales agent located in Spartanburg, South Carolina, Defendant Zimmer America Corporation ("Zimmer"). ECF No. 42 Cambridge entered into a written agreement with Zimmer to complete the sale of the machinery. ECF No. 42. Paragraph 8.1 of the written agreement states that "all claims, disputes, and controversies arising out of or relating to this agreement…shall, in lieu of court action, be submitted to arbitration" in Spartanburg, South Carolina. ECF No. 42. Cambridge brought this lawsuit because it began experiencing "countless problems [with the machinery] . . . almost from the beginning," and

Anglada refused to assist in remedying the purported issues. ECF No. 42. The sole relief sought by Cambridge from this Court is an order compelling arbitration between all parties as set forth in Paragraph 8.1 of the written agreement. ECF No. 42. Defendant Zimmer filed a Response to this Motion, consenting to an order compelling arbitration between all parties. ECF No. 43. Defendant Anglada failed to respond. For the reasons set forth below, Plaintiff's Motion to Compel Arbitration and Stay Proceedings is GRANTED.

## Analysis

A strong federal policy favors arbitration of disputes. In the words of the Supreme Court, the Federal Arbitration Act ("FAA") "establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Selex Chrysler-Plymouth*, 473 U.S. 164, 626 (1985).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute." *Whiteside v. Telltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Furthermore, the Fourth Circuit has repeatedly compelled arbitration where, as here, the arbitration clause applies to any dispute "arising from or related

to" the agreement. *Long v. Silver*, 248 F. 3d 309, 316 (4th Cir. 2001); *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 265–66 (4th Cir. 2000); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996).

A dispute clearly exists between Cambridge and Anglada because Cambridge asserts a claim against Anglada under the Uniform Commercial Code and the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). ECF No. 32. Specifically, Cambridge alleges that, in arbitration, it will prove an agreement between itself and Anglada to manufacture a "custom-designed machine meeting certain performance specifications, and carrying certain warranties, which agreement has been breached." ECF No. 42. Moreover, a written agreement, including an arbitration clause in Paragraph 8.1, exists covering "all claims, disputes, and controversies" arising out of the sale of the machinery, and the sale of the machinery clearly involves foreign commerce. ECF No. 42. Finally, Defendant Zimmer has consented to arbitration between all of the parties; however, Defendant Anglada failed to respond to the motion. ECF No. 43.

The next consideration for this Court is whether Anglada, a non-signatory to the Cambridge - Zimmer contract, can be compelled to arbitration. The Fourth Circuit has repeatedly recognized that non-signatories to an agreement containing an arbitration clause may be compelled to arbitrate under several different legal tests. *See, e.g., Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 627 (4th Cir. 2006); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n.*, 384 F.3d 157, 160 n.1 (4th Cir. 2004); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001); *Int'l Paper Co. v.*

*Swabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000). In these cases, the Fourth Circuit has established three different legal theories for binding a non-signatory to arbitration: (1) the 'inherently inseparable facts test; (2) the 'control' test; or (3) the 'direct benefit' test.

Applicable to this case is the direct benefit test, where courts have compelled arbitration of non-signatories where the non-signatory seeks to derive a direct benefit from an agreement containing a broad arbitration provision. Where such a benefit is being sought, a non-signatory is estopped from refusing to comply with the arbitration provision. *See Am. Bankers*, 453 F.3d at 628 ("[I]t is unfair for a party to rely on a contract when it works to its advantage and repudiate it when it works to its disadvantage."); *Schwabedissen*, 206 F.3d at 417–18 ("In the arbitration context, the doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.")

Anglada derived a direct benefit from the written agreement between Cambridge and Zimmer because Anglada profited from the initial sale and it collected some of the payments due on the machinery directly from Cambridge. See ECF No. 42, Exhibits A & B. The principle of equitable estoppel compels the conclusion that Anglada should be required to arbitrate the issues arising from the sale of the machinery to Cambridge. Simply put, it would be inequitable to allow Anglada to reap the benefits from the sale of its machinery, while simultaneously attempting to avoid the terms of an arbitration provision contained therein. Accordingly, this Court

believes that Defendants, Anglada and Zimmer, are bound by the arbitration provision in the written agreement and thus compelled to arbitrate this dispute in Spartanburg, South Carolina.

## Conclusion

For all of the foregoing reasons, the Court finds the Defendants are bound by the arbitration provision in the written agreement.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Stay Proceedings and Motion to Compel Arbitration is **GRANTED**. This Court retains jurisdiction so that any party may seek confirmation or enforcement of any arbitration decision.

**IT IS SO ORDERED.**

*[signature]*

G. Ross Anderson, Jr.
Senior United States District Judge

September 9, 2015
Anderson, South Carolina