UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Cambridge Towel Company, Inc.,    )
        )        C/A No.: 7:14-cv-04089
        Plaintiff,    )
        )
        v.        )        **ORDER**
        )        (Written Opinion)
Zimmer America Corporation, and    )
Juame Anglada Viñas, S.A.,    )
        )
        Defendants.    )
_____ )

Pending before the Court is Defendant Juame Anglada Viñas, S.A.'s ("Anglada"), Motion for Summary Judgment for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 56 and Plaintiff Cambridge Towel Company, Inc.'s ("Cambridge") Motion to Compel Arbitration. Anglada's Motion for Summary Judgment is GRANTED because, for the reasons stated below, the Court lacks personal jurisdiction over Anglada. Accordingly, Cambridge's Motion to Compel Arbitration and Stay Proceedings is moot as to Anglada, and GRANTED as to Defendant Zimmer America Corporation ("Zimmer").

## Background and Procedural History

Cambridge is a Canadian corporation engaged in the business of manufacturing and selling woven and printed terry towels. ECF No. 7 at 1–2. Zimmer is a South Carolina corporation that has a history of "assisting companies in the textile industry by supplying, installing, and servicing textile machinery." ECF No. 54-1. Anglada is a

Spanish corporation engaged in the business of manufacturing textile machinery and equipment. ECF No. 51.

In 2013, Zimmer contacted David Hamby ("Mr. Hamby"), the President of Operations for Cambridge, to discuss Cambridge's need for a dryer. ECF No. 54-2, ¶¶ 1 & 2. Mr. Hamby had several conversations with Zimmer personnel, including Bob Patterson ("Mr. Patterson"), who led Mr. Hamby to believe that Zimmer was Anglada's North American sales agent. ECF No. 54-2, ¶¶ 6 & 7. Following these conversations, Mr. Hamby and Dan Tamkin ("Mr. Tamkin"), the CEO of Cambridge, travelled to Anglada's plant in Llagosta, Spain where they met with Mr. Patterson and Juame Anglada ("Mr. Anglada") to witness trial runs of Anglada's equipment and discuss Cambridge's requirements and specifications. ECF No. 54-2 at 3. Mr. Hamby engaged in negotiations with Mr. Anglada for the specifications and requirements of the dryer, structure of the sale, and purchase price of the dryer, after which Mr. Hamby states he orally agreed to purchase an Anglada dryer. ECF No. 52-1, ¶ 9. Specifically, Mr. Hamby states that Mr. Anglada "insisted and required that the sale be routed through Zimmer" and that Zimmer agreed to purchase the dryer with the specifications discussed between Mr. Hamby and Mr. Anglada, for purposes of reselling it to Cambridge. ECF No. 52-1, ¶ 8.

Following the visit to Spain, a purchase order was entered for the sale of the dryer from Anglada to Zimmer, for immediate resale to Cambridge. ECF No. 54-2; ECF No. 54-5. Zimmer's written contract with Anglada stated that the "end user" was Cambridge. ECF No. 54-2. Additionally, the Anglada-Zimmer contract contained a forum

selection clause designating the courts of Barcelona, Spain for the resolution of any disputes that might arise out of Anglada's contract with Zimmer. ECF No. 54-4 at 6. Subsequently, Zimmer entered into a written contract with Cambridge for the resale of the dryer. ECF No. 51-2. Paragraph 8.1 of the written Zimmer-Cambridge contract states that "all claims, disputes, and controversies arising out of or relating to this agreement…shall, in lieu of court action, be submitted to arbitration" in Spartanburg, South Carolina. ECF No. 42. Under the terms of these two contracts, Zimmer was to pay Anglada for the dryer, and Cambridge was to pay Zimmer. See ECF No. 54-2; ECF No. 54-5. However, on February 2, 2014, at the request of Zimmer, Anglada invoiced Cambridge for the entire purchase price of the dryer, and Cambridge subsequently made payments directly to Anglada. ECF No. 54-6; ECF No. 51-4 ¶ 12.

The dryer was constructed in Spain and shipped directly to Cambridge's factory in Canada in May 2014. ECF No. 51-4; ECF No. 7 at 4.  After shipment and installation of the dryer, Cambridge began experiencing "countless problems [with the machinery] . . . almost from the beginning." ECF No. 42. After several attempts by Cambridge to remedy the issues, Cambridge filed suit on October 21, 2014 under the U.S. Arbitration Act, 9 U.S.C. § 1, naming "Zimmer America Corporation" and "Juame Anglada Versa, S.A." as Defendants in the breach of contract action. ECF No. 1 at 2.  On November 3, 2014, with consent of the Court, Cambridge filed its first Amended Complaint to correct the spelling of Anglada's name from "Juame Anglada Versa, S.A."  to "Juame Anglada Viñas, S.A." ECF No. 7. On June 18, 2015, with consent of the Court, Cambridge filed its second Amended Complaint to assert a cause of action against Anglada under the

United Nations Convention on Contracts for the International Sale of Goods ("CISG"). ECF 40.

Shortly thereafter, on August 11, 2015, Cambridge filed a Motion to Compel Arbitration and Stay Proceedings. ECF No. 42. Zimmer filed a Response to the Motion, consenting to an Order to compel arbitration. ECF No. 43. On September 9, 2015, the Court granted Anglada an extension of time to file a Response in Opposition to the Motion to Compel Arbitration and Stay Proceedings, ECF No. 47, which Anglada filed on September 11, 2015. ECF No. 50. On September 11, 2015, Anglada also filed a Motion for Summary Judgment, asking the Court to dismiss all causes of action against Anglada contained in Cambridge's Second Amended Complaint on grounds that this Court lacks personal jurisdiction over Anglada. ECF No. 49. On September 21, 2015, Cambridge filed a Reply to the Response in Opposition to the Motion to Compel Arbitration and Stay Proceedings, ECF No. 52, and on September 28, 2015 Cambridge filed a Response in Opposition to the Motion for Summary Judgment.  ECF No. 54. Similarly, Zimmer filed a Response in Opposition to the Motion for Summary Judgment on September 28, 2015. ECF No. 56. On October 9, 2015, Anglada filed a Reply to the Responses in Opposition to its Motion for Summary Judgment. ECF No. 60. For the reasons discussed herein, Anglada's Motion for Summary Judgment is GRANTED, and Cambridge's Motion to Compel Arbitration and Stay Proceedings is moot as to Anglada, and GRANTED as to Zimmer.

**Standard of Review**

Anglada has moved for summary judgment for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 56. When a defendant challenges the Court's personal jurisdiction prior to discovery in a motion to dismiss, the plaintiff is required only to make a prima facie showing of personal jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.2d 390, 396 (4th Cir. 2003). At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations. *Id.* However, when a defendant asserts that the court lacks personal jurisdiction in a summary judgment motion after the close of discovery, as Anglada has done here, the plaintiff must support its prima facie showing with an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied*, 493 U.S. 854 (1990). If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought. *Id.* Summary judgment is appropriate when the pleadings, depositions, affidavits, and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Turner v. Millman*, 392 S.C. 116, 122, 708 S.E.2d 766, 769 (2011).

Ordinarily, an evidentiary hearing is not required if one is not requested. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) ("[W]e do not hold that the district court in this case erred in failing to hold an evidentiary hearing, as there is no indication that either party requested one.") However, "[i]f the defendant

contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence." *Id.* at 85 (*quoting Ball,* 902 F.2d at 197.))[1]

## Discussion

### I. *Personal Jurisdiction*

"[I]n the absence of a federal rule or statute establishing a federal basis for the assertion of personal jurisdiction, the personal jurisdiction of the district courts is determined in diversity cases by the law of the forum State." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 (1982) (Powell, J., concurring). Therefore, in this diversity action, the Court applies South Carolina law in determining whether it has personal jurisdiction over Anglada. Determining whether a court's jurisdiction over a defendant is proper begins by "(1) determining if the state's long-arm statute confers jurisdiction and (2) whether the exercise of jurisdiction, if authorized [by the state's long-arm statute], is consistent with the Due Process requirements of the Fourteenth Amendment." *Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 109 (D.S.C. 2009) (citing to *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Because South Carolina's long-arm statute has been interpreted to extend personal jurisdiction to the "full reach of Due Process," courts analyzing personal jurisdiction under South Carolina law focus their inquiry on whether exercising personal jurisdiction

---

[1] Here, the Movant purports not to contest Plaintiff's factual allegations and chooses instead to rely on the insufficiency of the allegations to establish the lack of personal jurisdiction. Accordingly, the Court declines to hold an evidentiary hearing, and will analyze this Motion based upon the briefs submitted to the Court.

is consistent with due process. *Id.*; *see also In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997).

As a matter of due process, "[p]ersonal jurisdiction exists where a defendant has 'minimum contacts' with the forum 'such that . . . maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F.Supp.2d 639, 644 (D.S.C. 2005) (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 942 (4th Cir. 1994) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954))). These contacts must sufficiently demonstrate that the defendant is subject to either specific or general jurisdiction in South Carolina. *Id.* at 644*; Harris*, 261 F.R.D. at 109.

### a.    *Specific Jurisdiction*

After a careful review of the record in this case, the Court finds it does not have specific personal jurisdiction over Anglada. In determining specific jurisdiction, the court considers "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 29 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). Thus, the "constitutional touchstone" of specific personal jurisdiction "remains that an out-of-state person has engaged in some activity purposefully directed toward the forum state." *ESAB Grp., Inc., v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *Lesnick*, 35 F.3d at 945.)) "The contacts related to the cause of action must create a

'substantial connection' with the forum state, . . . [and] the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Grp., Inc.*, 126 F.3d at 625; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("[A] defendant will not be hailed into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . ." (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984))).

> The South Carolina long-arm statute provides in relevant part that:
>
> [A] court may exercise personal jurisdiction over an individual acting directly *or through an agent* for causes of action arising from the individual's: (1) transacting any business in this State . . . [or] (7) entry into a contract to be performed in whole or in part within this State.

S.C. Code Ann. § 36-2-803 (Supp. 2008) (emphasis added). Cambridge asserts that Anglada is subject to specific jurisdiction because "the dryer manufactured by Anglada was sold to a South Carolina corporation pursuant to an exclusive distribution contract with a South Carolina corporation." ECF No. 54 at 8. However, because Cambridge is not a party to, and therefore, cannot sue under the Anglada-Zimmer contract, and this suit does not arise out of the Cambridge-Zimmer contract, Cambridge asserts specific jurisdiction over Anglada arising out of the Cambridge-Zimmer contract under an agency theory, arguing that "all of the contacts between Zimmer and Cambridge can be imputed to Zimmer's principal, Anglada." ECF No. 54 at 8. Simply put, Cambridge is asking the Court to impute all of Zimmer's contacts with South Carolina to Anglada upon a finding that Anglada is the principal and Zimmer is its agent. Furthermore, Cambridge argues that there were several communications between Anglada and Zimmer over the

dryer and its performance while Zimmer was located in South Carolina, as well as a payment by Zimmer in South Carolina to Anglada to support a finding of specific personal jurisdiction under the State's long-arm statute. ECF No. 54 at 8.

       *i.*       *Actual Agency*

Anglada disputes a finding of specific personal jurisdiction under an agency theory arising out of the Cambridge-Zimmer contract, asserting that "Zimmer is not . . . an agent of Anglada," ECF No. 60 at 5, because Anglada lacks the requisite "right to control, nor does it control, the conduct of Zimmer." ECF No. 60 at 5–6. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Restatement (Third) of Agency § 1.01 (2006). "The test to determine agency is whether or not the principal has the *right to control* the conduct of his alleged agent." *Fernander v. Thigpen*, 278 S.C. 140, 144, 293 S.E.2d 424, 426–27 (1982) (emphasis in original), and the Plaintiff has the burden of proving the Defendant acted as an actual agent. *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 244, 473 S.E.2d 865, 867 (Ct. App. 1996) ("A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts.")

There is no genuine issue of material fact that an agency relationship does not exist between Anglada and Zimmer. Cambridge attempts to establish an agency relationship based on the 2008 exclusive distribution contract between Anglada and Zimmer that granted Zimmer the right to resell Anglada products in the United States,

Puerto Rico, and Canada. However, as Anglada points out in its Reply, Anglada does not exercise, nor have the right to exercise, any control over Zimmer. Importantly, Zimmer and Anglada are "located in separate countries, divided by an ocean and a language;" "Anglada [and Zimmer do not] share employees, management, or the same members of their corporate boards;" "Zimmer . . . has been involved with a grand total of three sales of Anglada machinery in North America since 2008," none of which were sold to South Carolina citizens or entered South Carolina in transit; "Anglada does not control the daily operations of Zimmer nor does it dictate Zimmer's marketing or advertising policies;" and lastly, "Anglada does not control Zimmer's technical staff or dictate sales decisions." ECF No. 60 at 5.

Accordingly, the Court finds that Zimmer is not Anglada's actual agent and therefore, is not willing to impute Zimmer's contacts in South Carolina to Anglada.

ii.    *Apparent Agency*

Anglada also disputes a finding that Zimmer's contacts in South Carolina should be imputed to Anglada under an apparent agency theory. "Under South Carolina law, [t]he elements which must be proven to establish apparent agency are: (1) that the purported principal consciously or impliedly represented another to be his agent; (2) that there was a reliance upon the representation; and (3) that there was a change of position to the relying party's detriment." *Froneberger v. Smith*, 406 S.C. 37, 47, 748 S.E.2d 625, 630 (Ct. App. 2013) (citing to *Graves v. Serbin Farms, Inc.*, 306 S.C. 60, 63, 409 S.E.2d 769, 771 (1991)). "Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which,

reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him." *Id.* (citing to *Frasier*, 473 S.E.2d at 867–68.) "Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief." *Frazier*, 473 S.E.2d at 868. "Moreover, an agency may not be established solely by the declarations and conduct of an alleged agent." *Id.*

Here, there is no evidence to support a finding of apparent agency because Anglada did not consciously or impliedly represent to Cambridge that Zimmer was its agent. First, Cambridge directs the Court to the exclusive distribution contract entered into by Zimmer and Anglada on December 12, 2008, which guaranteed Zimmer exclusive rights to sell Anglada's products in the United State, Puerto Rico and Canada, set forth a commission table to be paid above net machinery value, and stated that "the representation of [Anglada's] machines would be handled by [Zimmer]." *See* ECF No. 54-3. However, the 2008 distribution contract that states Zimmer is Anglada's North American sales agent, was made to Zimmer, not to Cambridge, and there is no evidence that Cambridge knew of, or relied on, the distribution contract at the time it purchased the dryer. Moreover, Cambridge concedes that it was aware that Anglada required Cambridge to enter into a separate contract with Zimmer. Next, Cambridge directs the Court to an email sent from Roland Zimmer ("Mr. Zimmer") to Mr. Hamby on September 17, 2014 stating that Zimmer was the "agent for Anglada in North America." ECF No.54-2, Ex. B. However, the representations made by Mr. Zimmer to Mr. Hamby do not establish an agency relationship because "agency may not be established solely

by the declarations and conduct of an alleged agent." *Frazier*, 473 S.E.2d at 868. Lastly, Cambridge directs the court to a document prepared by Anglada's Spanish counsel that referred to Zimmer as its "representante". ECF No. 54-2, Ex. C. However, this statement occurred during litigation, after the purchase of the dryer, and therefore, Cambridge cannot prove that it relied on the statement to its detriment.

After carefully reviewing the record, the Court does not find that Cambridge submitted sufficient evidence to create a genuine issue of material fact as to whether Anglada represented to it that Zimmer had apparent authority to act as its agent. In the absence of an agency relationship between Anglada and Zimmer, Cambridge is unable to establish specific personal jurisdiction. Accordingly, this Court finds it cannot assert specific personal jurisdiction over Anglada because Anglada does not have the necessary minimum contacts to establish that it purposefully availed itself of the privileges of conducting activities in this State.

### b.    *General Jurisdiction*

The Court also concludes it does not have general personal jurisdiction over Anglada. If the defendant's contacts with the forum are not the basis of the suit, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc.*, 293 F.3d at 712.  A court has general jurisdiction if the defendant has an "enduring relationship" with the forum state, even if the contacts are not directly related to the cause of action. *See Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 495, 611 S.E.2d 505, 510 (2005). To satisfy the enduring relationship requirement of general jurisdiction, "the non-resident defendant's contacts

must be so continuous and systematic as well as so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely different from those activities." *Id.* (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)); *Coggeshall v. Reprod. Endocrine Assoc. of Charlotte*, 376 S.C. 12, 17, 655 S.E.2d 476, 478–79 (2006) ("An enduring relationship is indicated by contacts that are substantial, continuous, and systematic."). Furthermore, the defendant's contacts with the forum must satisfy the Due Process Clause. *Cribb*, 328 S.E.2d at 718 (*citing to Coggeshell*, 655 S.E.2d at 478.) Thus, Cambridge's assertion of general jurisdiction hinges on whether Anglada has "affiliations with [South Carolina] that are so 'continuous and systematic' as to render them essentially at home in [South Carolina]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

Cambridge asserts that Anglada is subject to general jurisdiction in South Carolina because Anglada has had a business relationship with Zimmer since 2008, ECF No. 54 at 7, and thus, there is an "enduring relationship" between Anglada and South Carolina to support a finding of general personal jurisdiction. ECF No. 54 at 7–8.The distribution agreement reached between Zimmer and Anglada on October 12, 2008, started the parties business relationship and guaranteed Zimmer exclusive rights to sell Anglada's products in the United State, Puerto Rico and Canada, set forth a commission table to be paid above net machinery value, and stated that "the representation of [Anglada's] machines would be handled by [Zimmer]." *See* ECF No. 54-3. However, this agreement alone is insufficient to support a finding that Anglada has an "enduring relationship" with South Carolina and is "essentially at home" as

13 of 15

contemplated in *Goodyear* because there are no other facts to support a substantial or continuous relationship. Rather, the facts presented indicate Anglada's relationship with South Carolina is attenuated at best. Importantly, pursuant to the distribution agreement, Zimmer has sold only three of Anglada's products since 2008, none of which were sold to South Carolina citizens or entered South Carolina. Moreover, Anglada does not do business in the State of South Carolina, "[does not] own property [there], [does not] have offices or employees located [there];" "has never made a direct sale to an end customer in South Carolina;" "is not registered to do business in the State of South Carolina nor does it have a registered agent in South Carolina;" and lastly, Anglada "does not engage in any marketing initiatives or sales efforts in South Carolina, or aimed at anyone located in the State." ECF No. 60 at 3; *see also* ECF Nos. 49-1 & 51, Ex. 4. Accordingly, the Court declines to assert general personal jurisdiction over Anglada.

For the reasons discussed herein, the Court finds that it has neither specific nor general personal jurisdiction over Anglada, and therefore, Anglada's Motion for Summary Judgment is GRANTED.

## II.  *Motion to Compel Arbitration*

Upon a finding that this Court lacks personal jurisdiction over Anglada, this Court also lacks the authority to compel Anglada to arbitrate this dispute in South Carolina. Accordingly, Cambridge's Motion to Compel Arbitration and Stay Proceedings is moot as it applies to Anglada. However, Zimmer filed a Response consenting to the Motion to Compel Arbitration and Stay Proceedings on August 19, 2015. ECF No. 43.

Accordingly, this Court GRANTS Cambridge's Motion to Compel Arbitration and Stay Proceedings as it applies to Zimmer. Cambridge and Zimmer shall arbitrate this dispute in Spartanburg, South Carolina as set forth in Paragraph 8.1 of the Zimmer-Cambridge contract.

**IT IS THEREFORE ORDERED** that Anglada's Motion for Summary Judgment for Lack of Personal Jurisdiction is GRANTED, and Cambridge's Motion to Compel Arbitration and Stay Proceedings is moot as to Anglada and GRANTED as to Zimmer as set forth in this Order.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

November 9, 2015
Anderson, South Carolina